PEOPLE v CHAMBERS

Docket Nos. 78504, 78734. Argued November 4, 1987 (Calendar No. 6).
Decided March 29, 1988.

Dwight Chambers pled guilty in the Kent Circuit Court, Roman
J. Snow, J., of larceny in a building, and subsequently, in the
same court, Robert A. Benson, J., of breaking and entering. The
larceny in a building offense had been committed while the
defendant was free on bond for the breaking and entering
offense. Judge Benson imposed sentence for the breaking and
entering offense prior to imposition of sentence by Judge Snow
for the larceny in a building offense, with the condition that it
be consecutive to whatever sentence would be imposed for the
larceny in a building offense. The Court of Appeals, BEASLEY,
P.J., and R. M. MAHER and TAHVONEN, JJ., in an unpublished
opinion per curiam, vacated that portion of Judge Benson's
sentence which required it to be served consecutively to the
sentence imposed by Judge Snow on the ground that Judge
Benson lacked discretion to impose a consecutive sentence, and
affirmed the sentence of Judge Snow, holding that the sen-
tences were to run concurrently (Docket Nos. 83137, 83209).
The people appeal.

In an opinion by Justice ARCHER, joined by Chief Justice
RILEY and Justices LEVIN, CAVANAGH, and GRIFFIN, the Su-
preme Court held:

A court which imposes sentence upon a defendant who is
awaiting sentencing in a separate court for a separate offense
lacks discretion to impose a consecutive sentence; authority to
impose a consecutive sentence, as accorded by statute, rests
with the court imposing sentence last in time.

1. Consecutive sentences, as permitted by statute, are in-
tended to deter persons charged with one felony from commit-
ting another prior to final disposition of the first. Absent
statutory authority, imposition of consecutive sentences is for-
bidden. Although the purpose of deterrence is self-evident,
neither the statute nor its legislative development indicates

REFERENCES
Am Jur 2d, Criminal Law §§ 552, 553.
Sentences by different courts as concurrent. 57 ALR2d 1410.

who is to exercise such authority. While restricting the discretion for consecutive sentencing to the court imposing sentence last in time does not afford the maximum amount of deterrence, neither does it reduce the level of deterrence from that which existed prior to the charging of the initial offense. Restriction of the authority to impose a consecutive sentence to the court imposing sentence last in time strikes the appropriate balance between the deterrence sought by the Legislature and the defendant's right to due consideration of the sentence's effect upon the period of incarceration.

2. The purpose of consecutive sentencing is to enhance the punishment imposed upon persons who have been found guilty of more serious crimes and who repeatedly engage in criminal acts. A defendant facing cumulative punishment, at a minimum, is entitled to due consideration of the relationship between a proposed consecutive sentence and any other period of incarceration to which the defendant may be subject. A defendant is deprived of a thorough examination of the effect of a consecutive sentence where the court sentencing first in time premises a consecutive sentence on a nonexistent sentence.

Affirmed in part, reversed in part, and remanded.

Justice BOYLE, joined by Justice BRICKLEY, dissenting, stated that the Legislature presumably considered policy issues implicated by consecutive sentencing when it provided discretion to sentencing judges to impose consecutive sentences upon a person who while charged with, and ultimately convicted of, one felony commits a subsequent felony while awaiting disposition of the initial offense. Since there is no express provision in the statute limiting this discretion to the judge who imposes the second sentence, and such a limitation would advance neither the policies underlying the statute nor the proper administration of the criminal justice system, the policy of deterrence is best served by allowing both sentencing judges the authority to impose consecutive sentences.

CRIMINAL LAW — SENTENCES — CONSECUTIVE SENTENCES.

A court which imposes sentence upon a defendant who is awaiting sentencing in a separate court for a separate offense lacks discretion to impose a consecutive sentence; authority to impose a consecutive sentence, as accorded by statute, rests with the court imposing sentence last in time (MCL 768.7b; MSA 28.1030[2]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William A. Forsyth,*

Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*James R. Rinck* for the defendant.

ARCHER, J. MCL 768.7b; MSA 28.1030(2) of the Michigan Code of Criminal Procedure authorizes consecutive sentencing where a defendant commits a felony while free on bond for a prior felony charge.[1] This Court granted plaintiff leave to appeal to determine whether the code's qualified grant of consecutive sentencing authority extends to the trial court first in time to render sentence. We hold that MCL 768.7b; MSA 28.1030(2) accords the prerogative of consecutive sentencing solely to the court last in time to impose sentence. We affirm the Court of Appeals finding that the first-in-time sentencing court lacked discretionary consecutive sentencing authority. However, we vacate defendant's sentences for both felony convictions and remand to the circuit court for resentencing in accord with this Court's opinion.

FACTUAL AND PROCEDURAL BACKGROUND

On May 23, 1984, defendant Dwight Chambers was charged with breaking and entering with intent to commit larceny. MCL 750.110; MSA

---

[1] When a person, who has been charged with a felony and pending the disposition of the charge, commits a subsequent offense which is a felony, upon conviction of the subsequent offense or acceptance of a plea of guilty, guilty but mentally ill, or nolo contendere for the subsequent offense, the following shall apply:

(a) The sentences imposed for conviction of the prior charged offense and a subsequent offense, other than a major controlled substance offense, may run consecutively.

(b) The sentences imposed for conviction of the prior charged offense and a subsequent offense which is a major controlled substance offense shall run consecutively.

28.305. Defendant appeared before Kent Circuit Court Judge Robert A. Benson and was released on personal recognizance bond on June 16, 1984. While free on bond, defendant was charged with larceny in a building, MCL 750.360; MSA 28.592. Defendant was arraigned before Kent Circuit Court Judge Roman J. Snow and subsequently detained.

On September 26, 1984, defendant pled guilty of both felonies in exchange for the dismissal of charges unrelated to this appeal. On October 17, 1984, Judge Benson sentenced defendant for the breaking and entering conviction to a term of two to ten years to run consecutively to whatever term Judge Snow had yet to impose for the larceny conviction.[2] At the sentencing hearing's close, Judge Benson concluded:

> Plus, I am not [sic] starting to get tougher on these people getting out and committing crimes on bond. I am very easy to let people out on bond; the jails are crowded. When people are out on bond and committing offenses, I think we ought to get the word out on the streets that they are going to do there [sic] time consecutively.
>
> It is, therefore, the sentence of the Court, Mr. Chambers, that you be committed to the Michigan Department of Corrections to serve a period of time of not less than two nor more than ten years, this sentence to run consecutive to any sentence Judge Snow may give you in Case No. 35567. This will run consecutive to the sentence that Judge Snow may give you.

Judge Snow sentenced defendant the following day for the larceny conviction. At the hearing's

[2] The term consecutive or cumulative sentences mean those following in a train, succeeding one another in a regular order, with an uninterrupted course or succession, and having no interval or break. By contrast, the term concurrent sentences refer to sentences operating simultaneously. See 21 Am Jur 2d, Criminal Law, § 552, p 914.

outset, defense counsel informed Judge Snow of Chambers' prior imposed sentence and contested Judge Benson's authority to impose a term running consecutively from a then nonexistent sentence:

> I would care to inform the Court that yesterday Mr. Chambers was sentenced by Judge Benson in case number 35210-FH to a term of 2 to 10, as I recall, a consecutive sentence to this one. *I do feel, however, that Judge Benson—I talked with him on that—I don't believe he has the authority to sentence on a consecutive nature; rather that's your discretion. I felt that I should mention that for your information because I do not feel Judge Benson can bind you in your discretion . . . .* I haven't had a chance to get back to him. But I would ask the Court in this case, understanding these circumstances, not to impose a consecutive sentence. [Emphasis added.]

Judge Snow subsequently sentenced defendant to a term of two to four years without comment on Judge Benson's alleged infringement of his sentencing discretion.

On November 30, 1984, Judge Benson denied defendant's postsentencing motion to void the consecutive sentence imposed at the October 17 hearing. Defendant appealed in the Court of Appeals. A unanimous Court of Appeals panel held, on the basis of its opinion in *People v Rondon,* 144 Mich App 410; 375 NW2d 761 (1985), rev'd 424 Mich 864; 380 NW2d 761 (1985), that MCL 768.7b; MSA 28.1030(2) did not grant the first-in-time sentencing court consecutive sentencing authority.[3] The Court vacated the portion of Judge Benson's sentence requiring it to run consecutively, affirmed the sentence imposed by Judge Snow, and ordered

---

[3] *People v Chambers,* unpublished opinion per curiam of the Court of Appeals, decided March 31, 1986 (Docket Nos. 83137, 83209).

that both terms run concurrently.[4] We granted plaintiff leave to appeal, 428 Mich 888 (1987).

I

Our task is one of statutory construction. In *White v Ann Arbor,* 406 Mich 554, 562; 281 NW2d 283 (1979), we succinctly defined our role with regard to legislative interpretation:

> The primary and fundamental rule of constitutional or statutory construction is that the Court's duty is to ascertain the purpose and intent as expressed in the constitutional or legislative provision in question. Also, while intent must be inferred from the language used, it is not the meaning of the particular words only in the abstract or their strictly grammatical construction alone that governs. The words are to be applied to the subject matter and to the general scope of the provision, and they are to be considered in light of the general purpose sought to be accomplished or the evil sought to be remedied by the constitution or statute.

Guided by these canons of statutory construction and the Legislature's express mandate that provisions under the Code of Criminal Procedure be deemed remedial and be liberally construed to effectuate the intents and purposes of the act, MCL 760.2; MSA 28.842, we turn first to the historical and legislative development of consecutive sentencing in Michigan.

It is well settled in Michigan that in the absence of statutory authority the imposition of consecutive sentences is forbidden. See *In re Bloom,* 53 Mich 597; 19 NW 200 (1884); *In re Allison,* 322 Mich 491; 33 NW2d 917 (1948); *In re Carey,* 372

---

[4] *Id.* at 3.

Mich 378; 126 NW2d 727 (1964). This Court, in *In re Lamphere,* 61 Mich 105, 108-110; 27 NW 882 (1886), attributed Michigan's policy of concurrent sentencing to the absence of consecutive sentencing authority at English common law:[5]

> The relations of this commonwealth to the common law are not altogether conformed to the holdings of some other states. In many of the states, statutes of parliament passed before or during the early days of the American colonies, as well as old colonial statutes and usages, have been recognized as part of the local common law, and have been construed and applied by the courts. But Michigan was never a common-law colony, and while we have recognized the common law as adopted into our jurisprudence, it is the English common law, unaffected by statute.
>
> In 1810 an act was passed putting an end to all the written law of England, France, Canada, and the Northwest and Indiana territories, as well as the French and Canadian customs, leaving no statute or code law in force except that of Michigan territory and the United States: 1 Terr. Laws, 900. And while we have kept in our statute-books a general statute resorting to the common law for all non-enumerated crimes, there has always been a purpose in our legislation to have the whole ground of criminal law defined, as far as possible, by statute. There is no crime whatever punishable

---

[5] See, generally, Campbell, Law of Sentencing, § 73, p 238.

"At common law sentences for felonies could not be consecutive. A convicted felon under sentence could always plead *autrefois attaint* [a plea that the defendant has already been attainted for one felony, and therefore cannot be criminally prosecuted for another]. Since the sentence was generally invariably death the question was of no importance. However, cumulative punishments were not unknown and prisoners were sometimes hanged for one offense, drawn for another, and quartered for a third." [Quoting Newark, Samuels & White, *Sentencing the multiple offender: Concurrent and consecutive sentences,* 23 N Ire L Q 133, 134 (1972).]

by our laws except by virtue of a statutory provision. The punishment of all undefined offenses is fixed within named limits, and beyond the unregulated discretion of the courts.

\*   \*   \*

There is, however, no authority to be found, so far as our examinations have gone, and so far as the criminal law citations are found in the best elementary books, which holds that such a practice [i.e., consecutive sentencing] exists at common law in felonies. In *Reg v Cutbush,* L R 2 Q B 379 [1867], it is said distinctly that a statute was necessary to apply to felonies the practice in misdemeanors. That case points out how the British statutes have provided for it. That is a recent, and, beyond question, a correct, statement of the law.

Whatever elasticity there may be in civil matters, it is a safe and necessary rule that criminal law should not be tampered with except by legislation. Under our constitution this must be done by statutes clearly pointing out in their titles and provisions the precise purpose designed. . . . As we have no statutes on the subject, we must, in our opinion, wait until the Legislature shall see fit to devise adequate means to avoid these difficulties.

It is clear that the Legislature has followed a conservative course of abrogating the common law with regard to consecutive sentencing. Prior to its adoption of MCL 768.7b; MSA 28.1030(2), the Michigan Legislature authorized discretionary consecutive sentencing in two instances: (1) where the defendant committed a felony while incarcerated[6] and (2) where the defendant was convicted for escape from incarceration.[7] The Legislature's reluctance to deviate from the common law is further evidenced within its adoption of the instant stat-

---

[6] See MCL 768.7a; MSA 28.1030(1).

[7] See MCL 750.193; MSA 28.390.

ute.[8] As originally enacted by 1971 PA 180, the consecutive sentencing statute extended discretionary consecutive sentencing authority in the instance where a defendant committed a felony while free on bond pending final disposition of a prior felony charge:

When a person, who has been charged with a felony and pending the disposition of the charge, commits a subsequent offense which is a felony, upon conviction or acceptance of a guilty plea of the subsequent offense, the sentences imposed for conviction of the prior charged offense and any subsequent offense, may run consecutively.

However, the Legislature rejected proposed amendments which would have authorized discretionary consecutive sentencing authority in regard to all multiple offenders[9] or imposed mandatory consecutive sentencing upon previously convicted

[8] HB 4150 was passed by a majority of house members by a vote of 95 to 1. Representative Traxler, the sole dissenting vote, stated:

Mr. Speaker and members of the House:
I voted no on the passage of House Bill No. 4150 because in its amended form, it severely restricts the concept of consecutive sentencing. Presently, in Michigan, we have the concurrent sentencing provisions, and the bill as originally introduced provided that the judges would have the option of ordering consecutive sentences for crimes. As passed by the House, it restricted consecutive sentencing concept to those persons who committed a crime, while they were out on bond, released from custody, waiting trial or sentencing. I think this seriously damages the concept of consecutive sentencing. I disagree with that and I voted no, not because I am opposed to consecutive sentencing, but rather that the House by amending the bill, has limited to only those specific instances I've already enumerated. [1971 Journal of the House 456-457.]

[9] As introduced by Representatives Kildee and J. F. Smith, HB 4150 would have provided:

The justices of the supreme court, or any of them, or any of the several circuit judges in the respective circuits, or any judge of a court having jurisdiction of criminal cases, in this

felony offenders.[10] Although the Legislature rejected an amendment to allow for mandatory consecutive sentencing to all previously convicted felons, in 1978 PA 77, it amended the consecutive sentencing statute to allow for mandatory consecutive sentencing of defendants who commit a crime involving a major controlled substance while free on bond for a prior felony offense.[11] While it is obvious the Legislature intended to deny the trial court's discretion with regard to imposing consecutive sentences which involve major controlled substances, we can find no indication that the Legislature's latest amendment of the consecutive sentencing statute is indicative of its intent regarding who should exercise such sentencing discretion when it is in fact available under the statute.

Upon review of the consecutive sentencing statute's legislative history, its evident purpose "is to deter those charged with one felony from committing another prior to final disposition of the first. Absent such a deterrent, a person could be assured of 'one free crime' because of the usual policy of concurrent sentencing." *People v Smith,* 423 Mich 427, 450; 378 NW2d 384 (1985). While the Legislature's purpose is self-evident, its intention regard-

state, *may* pronounce judgment against and pass sentence upon all persons heretofore convicted, or that may hereafter be convicted in any court held by *such* justices, or judges, or any of them, for any offense heretofore committed or that may hereafter be committed against the laws of this state. *Sentences may be imposed to run consecutively.* A sentence shall in no case or respect be greater than the penalty now or that may be prescribed hereafter by law. [Emphasis added.]

[10] Representative O'Brien would have amended HB 4150 to provide:

Any sentence imposed upon a person previously convicted and sentenced to imprisonment for another crime *shall be imposed* to run consecutively with the previous imprisonment sentence. [Emphasis added. 1971 Journal of the House 393.]

[11] See MCL 768.7b(b); MSA 28.1030(2)(b).

ing who was to exercise consecutive sentencing authority is unanswered by the statute's legislative development.[12] We, therefore, find that we must discern the construction which best effectuates the known ends sought by the Legislature.

II

Plaintiff argues that as the consecutive sentencing statute does not expressly state which court in time is authorized to issue consecutive sentences the prerogative falls to either sentencing court. We agree that this would unquestionably serve to maximize the statute's deterrent effect upon felony commission while at liberty on bond as the defendant would encounter a double risk of consecutive sentencing which would in effect heighten the potential of receiving a cumulative sentence. In other words, should the first judge fail to impose a consecutive sentence the second would logically retain such discretion. However, the matter of deterrence is not the sole consideration present. This Court cannot ignore the troublesome question whether the imposition of a consecutive sentence on the basis of a sentence yet to be imposed constitutes sound sentencing practice.

In *Commonwealth v Holz,* 245 Pa Super 376; 369 A2d 452 (1976), aff'd as modified 483 Pa 405; 397 A2d 407 (1979), a divided panel of the Superior

[12] Several recent decisions of this Court have acknowledged that it is appropriate to infer legislative intent from the purpose of similar statutes enacted by other jurisdictions. See *People v Stoudemire,* 429 Mich 262; 414 NW2d 693 (1987); *Wymer v Holmes,* 429 Mich 66; 412 NW2d 213 (1987). Defendant argues the consecutive sentencing statutes of several other jurisdictions shed insight into the consecutive sentencing issue before us. See Minn Stat 609.15(1); Wash Rev Code Ann 9.94A.400; Wis Stat Ann 973.15; Alas Stat 12.55.025. However, we find the above-cited provisions are not comparable to the instant statute as they resemble the rejected version of HB 4150 introduced by Representatives Kildee and J. F. Smith and thus are not instructive on the problem before us today.

Court of Pennsylvania affirmed the consecutive sentencing of a defendant whose consecutive sentence on one felony was imposed to run from whatever sentence the defendant had yet to receive on a pending felony conviction.[13] In that case, Pennsylvania Superior Court Judge Spaeth, concurring in part and dissenting in part, found that it violated sound sentencing practice to allow the first-in-time sentencing judge to impose a consecutive sentence. In his examination of defendant's predicament, Judge Spaeth stated:

> For Judge B to say, "My sentence shall be consecutive to whatever sentence Judge A some day decides to impose," can accomplish nothing except an interference with Judge A. Suppose Judge B thinks the proper sentence for the offense he is concerned with is 5 to 10 years; then he should sentence the defendant to 5 to 10 years. Nothing can be gained so far as determining what is a fair sentence by making the sentence consecutive to whatever sentence Judge A decides to impose. The only result will be to deprive Judge A of the option of making his sentence concurrent with or consecutive to Judge B's. Suppose that

---

[13] The defendant in *Holz* was sentenced pursuant to Pa R Crim P 1406(a), which provides:

> (a) Whenever more than one sentence is imposed at the same time on a defendant, or whenever a sentence is imposed on a defendant *who is incarcerated* for another offense, such sentences shall be deemed to run concurrently unless the judge states otherwise. [Emphasis added.]

While incarcerated and awaiting sentencing for a felony conviction, Holz was sentenced for an unrelated felony conviction to a term running consecutively from whatever sentence he had yet to receive on the felony for which he was then incarcerated. Defendant argued, Pa R Crim P 1406(a) did not authorize consecutive sentencing where a defendant was incarcerated but not yet sentenced. The Superior Court disagreed and held that the statute granted the sentencing court the prerogative to impose sentence even where it was unaware of the sentence the defendant had yet to receive on a pending felony conviction.

when the defendant appears before Judge A, Judge A is told that Judge B has imposed a sentence to run consecutive to whatever sentence Judge A imposes. This is the same as telling Judge A that he has been deprived of the ability that he would otherwise have had to provide that his sentence should run consecutive to Judge B's. There is no reason why Judge A should be thus deprived; indeed, he should not be, for it can only interfere with his ability to frame a sentence appropriate to the case before him.

[T]o require Judge B to make his sentence concurrent with or consecutive to an existing sentence, complications will be avoided: Judge A will know, as he should know, what Judge B has done. He will therefore be able without interference to frame his sentence as seems to him just.[14] [245 Pa Super 386-387.]

We share the concerns raised by Judge Spaeth in his opinion in *Holz.* The purpose of consecutive sentencing is to "*enhance* the punishment imposed upon those who have been found guilty of more serious crimes and who repeatedly engage in criminal acts."[15] *People v Smith, supra,* 423 Mich 445 (emphasis added). In light of this jurisdiction's clear preference for concurrent sentencing, we find that a defendant facing the specter of a cumula-

[14] On appeal to the Pennsylvania Supreme Court, the court vacated the portion of defendant's sentence which ran consecutively. See 483 Pa 405, 408; 397 A2d 407 (1979).

[15] See, generally, ABA Standards for Criminal Justice (Tentative Draft), Sentencing Alternatives and Procedures, Commentary (c) to § 3.4, p 177:

The function of the consecutive sentence should be similar to the function of the sentence imposed on habitual or dangerous offenders. Because of his repeated criminality the offender who has rendered himself subject to multiple sentences may pose the same type of unusual risk to the safety of the public. It would thus appear that he should be treated in a similar fashion.

tive term of imprisonment is at a minimum entitled to due consideration of the relationship between the proposed consecutive sentence and any other period of incarceration the defendant may be subject to. In the instant case, the defendant was deprived of a thorough examination of the effect of a consecutive sentence where the first-in-time trial court premised it upon a then nonexistent sentence. We therefore find that Judge Benson's sentence at the first hearing is inconsistent with this Court's notion of justice as it did not adequately examine the full punitive effect of a consecutive term.

In *People v Williams,* 89 Mich App 633, 637; 280 NW2d 617 (1979), the Court examined the deterrent effect sought by the Legislature:

> The intended effect of § 7b can best be seen by analyzing the deterrence situation that exists before and after a felony has been charged. In general, once a criminal defendant has been charged with a felony, the level of deterrence against his commission of a second felony drops. Section 7b restores the level of deterrence to its pre-charge plateau. *It does not, however, raise the level of deterrence above that plateau.* [Emphasis added.]

While restricting the discretion for consecutive sentencing to the last-in-time sentencing court obviously does not afford the maximum amount of deterrence, neither does it *reduce* the level of deterrence from its precharge plateau. Thus, we conclude that our restriction of consecutive sentencing authority to the court last in time to impose sentence strikes the appropriate balance between the deterrence sought by the Legislature and the defendant's right to be accorded due consideration of the effect of a cumulative sentence upon his period of incarceration.

CONCLUSION

The "[i]mposition of a consecutive sentence is strong medicine. It may well be warranted in some cases. But it should be used only after awareness of a sentence already imposed so that the punitive effect of the consecutive sentence is carefully considered at the time of its imposition." *Salley v United States,* 786 F2d 546, 548 (CA 2, 1986) (Newman, J., concurring). (Citation omitted.) We therefore hold that the prerogative of consecutive sentencing is accorded only to the court last in time to impose sentence.[16] Accordingly, while we affirm in part the decision of the Court of Appeals holding the first-in-time sentencing court lacked

---

[16] Accord, *People v Rondon,* 144 Mich App 410; 375 NW2d 761 (1985) (*Rondon I*). In *Rondon I,* the defendant was sentenced by the first-in-time trial court to a term consecutively ("heretofore") received on another felony charge. Defendant appealed in the Court of Appeals arguing that the sentencing judge was mistaken in believing that at the time the first sentence was issued he was subject to a felony conviction. The Court of Appeals reversed the defendant's sentence and held that MCL 768.7b; MSA 28.1030(2) did not grant the first sentencing court consecutive sentencing authority. 144 Mich App at 415. At 424 Mich 864, we reversed and remanded to the trial court for resentencing, stating in relevant part:

> Action was taken because of indications in the record that the sentencing judge in the instant case may have erroneously believed, in imposing a consecutive sentence, that the defendant had already been sentenced to a prison term in conjunction with another charge. *On remand the sentencing judge may exercise his discretion concerning the imposition of a consecutive sentence since the defendant, who was charged with a felony, committed a subsequent offense which was a felony.* [Emphasis added.]

On remand, the first-in-time sentencing court issued its original sentence. Rondon again appealed and in *People v Rondon,* unpublished opinion per curiam of the Court of Appeals, decided September 23, 1987 (Docket Nos. 94462, 96247) (*Rondon II*), the Court of Appeals construed our order to affirm the first-in-time trial court's consecutive sentencing authority. Upon examination of the underscored language in *Rondon,* we find that our order could reasonably be construed to sanction consecutive sentencing by the first-in-time sentencing court. However, we now hold that to the extent the above language in *Rondon* is inconsistent with this opinion, it is hereby vacated.

discretionary consecutive sentencing authority, we vacate defendant's sentences for both felony convictions and remand to the trial court for resentencing in accordance with this opinion.

Riley, C.J., and Levin, Cavanagh, and Griffin, JJ., concurred with Archer, J.

Boyle, J. (*dissenting*). The defendant in the instant case pled guilty of committing larceny in a building (offense 2) while released on bond pending trial on a charge of breaking and entering (offense 1). The defendant pled guilty to both offenses on September 26, 1984. At sentencing for the first offense on October 17, 1984, the judge who had released the defendant on bond sentenced the defendant to two to ten years, the sentence to run consecutively with any sentence imposed for the second offense. We are asked to decide whether the judge imposing the sentence first in time has authority under MCL 768.7b; MSA 28.1030(2) to impose a consecutive sentence. The majority has construed the statute to limit the discretion for consecutive sentencing to the judge sentencing last in time. I disagree with this conclusion, and find such construction to be inconsistent with the apparent purposes of the statute.

While the evident purpose of the statute is not in dispute, the Legislature's intention with regard to the exercise of the discretionary authority under § 7b(a) is not apparent. There are three possible constructions of the statutory language: 1) the judge sentencing first in time has the consecutive sentencing authority, 2) the judge sentencing second in time has the consecutive sentencing authority, and 3) either judge is authorized to impose consecutive sentences.

Because there is no express limitation on which

judge may impose a consecutive sentence in the stated circumstances, and because the policy of deterrence is not best served by the creation of such a limitation, the rule framed today by the majority does not facilitate the aims of the Legislature. That purpose is best effectuated by a construction of the statute that recognizes consecutive sentencing authority in either judge. Therefore, I respectfully dissent.

I

In this case, no one disputes that the purpose of the Legislature in enacting MCL 768.7b; MSA 28.1030(2) was "to deter those charged with one felony from committing another prior to disposition of the first." *People v Smith,* 423 Mich 427, 450; 378 NW2d 384 (1985). Opinion differs, however, upon the operational aspect of the statute. Specifically, as between the judge sentencing first or last in time, who is vested with the discretionary authority under § 7b(a) to order a consecutive sentence? While the majority correctly notes that the Legislature has proceeded cautiously when providing for consecutive sentencing, this conclusion "does not require rejection of that sense of the words which best harmonizes with the overall context of the statute[] and the end purpose sought to be achieved by such legislation." *People v Hall,* 391 Mich 175, 190; 215 NW2d 166 (1974). When a choice is to be made between two possible statutory interpretations, our practice is "to determine which of these conflicting interpretations best effectuates the legislative intent." *People v Smith, supra,* p 441. Our focus must therefore be to seek that interpretation of § 7b(a) which best serves its intended purpose.

II

The majority concludes that limiting the discretion to impose consecutive sentences to the last-in-time sentencing judge is necessary to afford the defendant consideration of the full effect of the sentences yet to be received. They conclude that such a thorough examination will be lacking if the first-in-time sentencing court is allowed to impose a consecutive sentence when the last-in-time sentence is unknown. No analysis is offered, however, to explain why such consideration is not met if we construe § 7b(a) to allow both sentencing courts authority to impose a consecutive term.

In this case, Judge Benson sentenced the defendant to a term of two to ten years to run consecutively to the sentence Judge Snow was to impose. Judge Snow was informed of these facts prior to his sentencing of the defendant at which time there was ample opportunity for him to examine the full effect of the combined sentences. The majority fails to explain why this does not sufficiently protect the defendant's interests, or how this concern could not be satisfied without unnecessarily restricting the sentencing discretion of Judge Benson. Further, the majority fails to explain how in any way the construction they would adopt furthers the legislative purpose behind § 7b(a).

The majority also concludes that withholding consecutive sentencing discretion in this instance serves to ensure that judges will exercise sound sentencing practice, citing *Commonwealth v Holz,* 245 Pa Super 376; 369 A2d 452 (1976), aff'd as modified 483 Pa 405; 397 A2d 407 (1979). In that case, Judge Spaeth concluded that affording the judge sentencing first in time the authority to order consecutive sentences only serves to deprive

the judge sentencing last in time of such discretion. The logic of this rationale is not apparent when one considers that if a choice is made between two judges, one or the other's sentencing discretion necessarily will be limited. The proper focus should not be deciding as between judges A and B whose discretion should be limited, but rather how best to effectuate the Legislature's purpose. The Legislature has decided that a consecutive sentence may result in this instance; our inquiry is restricted to the proper exercise of that mandate. We are not free to pick and choose over various interpretations of "legislative intent" to limit the effect of legislation, the wisdom of which we may question.

The majority's assumption that authorizing consecutive sentences in either court would maximize the deterrent effect of the statute is factually inaccurate. It is not the potential for a consecutive sentence that maximizes the deterrent effect of the statute but the actual imposition of such a sentence. The maximum deterrent effect is therefore achieved when a judge imposes the maximum possible consecutive sentence with full knowledge of a previously imposed sentence. In contrast, when a judge sentences first in time, the judge takes the risk that the deterrent effect of that sentence will be undercut by a second judge's imposition of a probationary sentence or a brief period of custody. Thus, it is the construction urged by the majority that makes it most likely that the defendant will sustain the effect of a fully informed consecutive sentence.

The fact, however, that the effect of the sentence imposed first in time may be interfered with by the nature of the second sentence no more invalidates that sentence than it would if the second judge imposed a consecutive sentence and the first

judge imposed probation. These are simply the consequences of the indeterminate sentencing law in which neither judge can predict what the exact effect of his sentence will be on a given defendant. Thus, while construction of the statute to give each judge consecutive sentencing authority does not assure either judge of the full effect intended by a consecutive sentence, it does assure that either the judge whose conditions of bond have been violated by the defendant's commission of a subsequent crime or the judge who actually sentences for the subsequent offense will have the opportunity to make the sentence more meaningful to a defendant. That there may be a sound policy reason supporting consecutive sentencing only by the judge sentencing second in time should not obscure other policy considerations, such as a concern for preserving, albeit imperfectly, the potential efficacy of each judge's sentencing authority.

Such balancing is not within the province of this Court. Once the purpose of the Legislature is identified, our role simply is to construe the provision in such a way as will best effectuate that purpose. We may neither question the wisdom of the enactment nor seek to impose our own view of sound sentencing policy on the Legislature. Such indulgence into "legislative drafting" not only flies in the face of the Legislature's intention that § 7b be liberally construed, it serves to restrict the sentencing discretion of a trial judge without justification for doing so. In my view, the Legislature struck the policy balance to maximize the trial court's potential for involvement in the consecutive sentence decision. The statute should not, therefore, be construed to mandate that the judge first imposing sentence upon a defendant who he knows has been convicted of another offense can

never make his sentence run consecutively to the other.[1]

III

The policy of deterrence is best served by allowing both sentencing judges the authority to impose consecutive sentences. While the judge whose bond was violated may have a greater interest in the ability to impose consecutive sentencing than the judge imposing sentence for a subsequent offense,[2] this fact alone does not justify limiting the sentencing discretion of the subsequent sentencing court. Conversely, allowing the various sentencing

[1] Later amendments of MCL 768.7b; MSA 28.1030(2) clearly show that the Legislature can limit sentencing discretion with specificity when it so wishes. 1978 PA 77 amended MCL 768.7b; MSA 28.1030(2) by adding a provision *requiring* consecutive sentencing where a subsequent offense is a major controlled substance offense: "The sentences imposed for conviction of the prior charged offense and a subsequent offense which is a major controlled substance offense shall run consecutively." MCL 768.7b(b); MSA 28.1030(2)(b). MCL 768.7b(a); MSA 28.1030(2)(a) retained the previous provisions permitting, but not requiring, consecutive sentencing where subsequent felony offenses are committed pending disposition of an initial felony charge. The absence of a specific limitation on the first sentencing judge's consecutive sentencing discretion is particularly significant in light of the specific limitation of MCL 768.7b(b); MSA 28.1030(2)(b) of sentencing discretion for major controlled substance offenses committed while released on bond.

[2] In the instant case, the first sentencing judge imposed the consecutive sentence because the defendant violated his bond:

I am no[w] starting to get tougher on these people getting out and committing crimes on bond. I am very easy to let people out on bond; the jails are crowded. When people are out on bond and committing offenses, I think we ought to get the word out on the streets that they are going to do the[ir] time consecutively.

It is, therefore, the sentence of the Court, Mr. Chambers, that you be committed to the Michigan Department of Corrections to serve a period of time of not less than two nor more than ten years, this sentence to run consecutive to any sentence Judge Snow may give you in Case No. 35567. This will run consecutive to the sentence that Judge Snow may give you.

schedules among the state jurisdictions to dictate sentencing authority not only is arbitrary, but also signals to the trial judges that they may be helpless to police their bonding decisions when violators are brought before them.

The majority fails to consider the unique problems that can arise when sentencing decisions involve different state jurisdictions or different jurisdictions within this state. In this case, the defendant committed his crimes within the jurisdictional limits of Kent County. Thus, the only question under the sentencing statute is whether Judge Benson encroached upon the sentencing authority of Judge Snow when he ordered a consecutive sentence. The Legislature may well have anticipated that successive criminal acts are not invariably committed within the same jurisdiction. Under the rule framed by the majority, had the defendant committed his second offense in Ohio rather than Michigan, the consecutive sentencing statute would be completely abrogated if the Ohio judge imposed sentence last in time. Regardless of the intentions of Judge Benson to order a consecutive sentence, because the defendant crossed the state border into Ohio, the only chance of a consecutive sentence would be if the Ohio court possessed such authority under its laws and concluded such punitive measures were appropriate. I doubt whether the Michigan Legislature intended that its law be so frustrated.

A similar situation would arise when the crimes are committed in Michigan in different counties. Had the defendant committed his initial offense in Wayne County, been released on bond, and subsequently traveled to a less populous county, where a second offense was committed, there is a likelihood that he would first be sentenced in the latter court, given the likely disparity of case loads and

correspondingly distinct docket backlog and sentencing schedules. Under the majority's reasoning, population, docket backlog, and sentencing schedules would play a deciding role in the vesting of sentencing authority under § 7b. I question the wisdom of such a scheme and seriously doubt whether the Legislature anticipated this result when § 7b was enacted.

Consequently, the most prudent choice is to preserve the sentencing power of both judges. Providing dual authority in this instance does not preclude sentence tailoring as feared by the majority. If the first sentencing judge imposes either a consecutive or a concurrent sentence, the second sentencing judge can still give as much of a sentence as is thought merited. If the first sentence is consecutive, the second judge can exercise mercy with a short sentence. If the first sentence is concurrent, the second judge can protect the second sentence by making it consecutive. In short, the sentencing power of the second sentencing judge does not depend on whether the first judge is deprived of the power to have the first sentence served consecutively. Preserving the sentencing power of both judges best fulfills the policy of MCL 768.7b; MSA 28.1030(2).

The Legislature presumably considered the policy issues implicated by consecutive sentencing. It provided discretion to sentencing judges to impose consecutive sentences where someone charged with, and ultimately convicted of, a felony commits a subsequent felony. There is no express provision in the statute limiting this sentencing discretion to the judge who imposes the second sentence, and such a limitation would advance neither the policies underlying MCL 768.7b; MSA 28.1030(2) nor the proper administration of the criminal justice system.

Therefore, I would reverse the decision of the Court of Appeals.

BRICKLEY, J., concurred with BOYLE, J.